## WALLACE *vs.* COLLINS.

Although, in a plea of justification by a constable, under an execution issued by a justice, the authority, commission, and jurisdiction of the justice ,are not averred with that particularity necessary at common law, nor the execution very artificially described, yet, if the plea states sufficient facts to constitute a justification, and necessarily implies that the judgment was rendered on a debt or contract, the plaintiff should have presented his objections to the plea by demurrer.

If he replies, the defects are cured, and he cannot, on demurrer to the replication, go back to the plea.

A horse, used by a tanner, is not an implement of trade, exempt from execution.

It is proper to overrule a motion to compel the plaintiff to give security for costs, made after the jury is sworn. Such a motion should always be made before the jury is summoned.

Where the defendant in execution delivered personal property to the officer, who had levied on it, his property was divested, and he could no longer forbid the sale, unless he satisfied the execution in some other way.

And though he afterwards forbids the sale, the constable does not commit a trespass by selling, nor the plaintiff by directing him to sell.

A party who offers parol evidence to prove a justice's judgment and execution, cannot complain of its admission.

THIS was an action of trespass, tried in the Washington Circuit Court, in November, 1841, before the Hon. JOSEPH M. HOGE, one of the circuit judges. Collins sued Wallace and one Burney, for taking away a horse. The defendants jointly pleaded the general issue, and each also filed a special plea of justification. Burney justified on the ground that two writs of execution were issued against Collins, by different justices, one in favor of Wallace, and one in favor of William E. Woodruff; that he, Burney, being then a constable, in Washington county, these writs came to his hands, to be executed; that, by virtue of them, he levied on the horse, and, after due advertisement, sold him to the highest bidder. Wallace justified on the ground that he obtained judgment against Collins, before a justice of the peace, and sued out execution, which was placed in the hands of Burney, the constable, and levied on the horse, &c.

6

Wallace *vs.* Collins.

The plaintiff replied to Burney's special plea, that he was a mechanic, carrying on the trade of tanning, in Washington county, and that the horse taken was *a necessary implement* of his trade of tanning, and that defendants, of their own wrong, took him. Burney filed, at one and the same time, a rejoinder and demurrer to this replication. He rejoined, that the horse was not a necessary implement of trade of the plaintiff, in his business of tanning, concluding to the country. He demurred, on the grounds that a horse is not an implement of trade; that the replication did not show that the plaintiff claimed the horse as exempt from levy, or as his own property; that it did not aver that it was the only horse used by him in his trade, or that he had no other horse. The plaintiff joined to the general issue, and also to the rejoinder, but took no notice of the demurrer; and in this situation the case went to trial. A juror being taken sick, the jury was discharged, and the case continued.

At the next term, on motion of the defendants, leave was given to both parties to withdraw *their pleas,* and amend them; and the case was continued. The record does not show what pleas, if any, were withdrawn or amended.

At the next term, the plaintiff replied to Wallace's second plea, by a replication, the same, in substance, as that to Burney's special plea, and Wallace demurred to the replication, on similar grounds. The Court overruled the demurrer, and the parties went to trial. After the jury was empannelled and sworn, and had taken their seats, the Court permitted a *nolle prosequi* to be entered as to Burney. Wallace then moved the Court to rule the plaintiff to give security for costs, which motion the Court overruled. The trial then proceeded; a verdict of guilty was rendered against Wallace; damages, $75, for which judgment was rendered.

Several bills of exception were taken, as to matters arising on the trial. The first matter excepted to was, permitting Burney to testify for the plaintiff, after a *nol. pros.* as to him. The second was, that the Court refused to hear evidence as to Collins' insolvency and inability to pay the costs, or to compel him to give security for costs. Another bill set out the evidence and instructions given and refused.

The evidence so set out amounted to this, that Burney levied an exe-

cution in favor of Wallace; and that, when he levied on the horse, Collins told him that he was mortgaged to a third person, which was not the case; that, when the constable went after the horse, on the day of sale, Collins bridled him and delivered him up, and went to town with him, and there objected to the sale. Wallace was present, and told the constable that Collins had plenty of property, and that, if he did not make the money, he would hold him responsible, but expressly refused to indemnify him. Wallace did not place the execution in the hands of Collins, nor give him any directions as to levying, nor was with him when he levied or took possession. Burney's testimony is, in one place, that Wallace told him to sell the horse; in another, that he did not direct him to sell. The horse was sold publicly, for about $49, which was paid over to Wallace, after the costs were deducted. The horse was proven to be the only one Collins had.

The Court refused to instruct the jury that, if Collins delivered the horse to Burney, they must find for Wallace; and instructed them that, though he so delivered it, yet, if he objected to the sale, and Wallace stood by and encouraged the sale, and received the money, they might find for the plaintiff.

The defendant afterwards moved for a new trial, because the Court erred in permitting Burney to testify; in refusing to instruct the jury that, if Collins delivered the horse to Burney, they must find for Wallace; and in instructing them as they did; and because the verdict was contrary to evidence. The motion was overruled, and Wallace excepted.

*Pike & Baldwin*, for plaintiff in error. This case was tried on the plea of the general issue, alone.

The demurrer to the replication to Wallace's plea was improperly overruled. "The necessary *tools* and *implements* of trade of any *mechanic*, while carrying on his trade," are exempt from execution. *Rev. St.* 377, *sec.* 20.

But a horse is neither a *tool* nor an *implement*. The words *tool* and *implement* are synonymous. Each is used to designate those implements which are commonly used by the hand of *one man*, in some

manual labor necessary for his subsistence. Each means some simple instrument used by the hand. Neither word includes the *utensils* of a *distillery;* or the *looms* and *spindles* of a manufactory; or the forges or other instruments in an iron factory; or a printing press and types. *Webster's Dict. Tool, Implement. Johnson's Dict., ibid. Simpson vs. Hartopp, Willes,* 512. *Gorton vs. Falkner,* 4 *T. R.* 565. *Buckingham vs. Billings,* 13 *Mass.* 82. *Howard vs. Williams,* 2 *Pick.* 80. *Danforth vs. Woodward,* 10 *Pick.* 423. Nor a *mill-saw. Batchelder vs. Shapleigh,* 1 *Fairf.* 135. *Spooner vs. Fletcher,* 3 *Vern.* 133. *Kilburn vs. Demming,* 2 *Vern.* 404.

The design and effect of the law is, to secure to *handicraftsmen* the means by which they are accustomed to obtain subsistence, in their respective occupations. *Howard vs. Williams, ut sup.*

The case being tried on the general issue alone, the evidence is wholly insufficient, as against Wallace, if it is before the Court at all.

The bills of exception as to all matters occurring at the trial, are waived, it is true, but the evidence and instructions embodied by them, are on the record.

So far as the evidence goes, it shows that the constable was warranted in taking the property; that he levied on it, and it was delivered peaceably, and legally sold. There is no evidence that Collins was a tanner, or the horse exempt by law. Nor does the evidence show that Wallace gave any such directions as made him responsible.

*D. Walker,* contra. A motion for a new trial is a waiver of all exceptions taken during the trial. *Danley vs. Robbins,* 3 *Ark.* 144. All the exceptions were taken to some opinion of the Court, during the progress of the suit; none to the opinion of the Court overruling the motion for a new trial; nor is the evidence there embodied and preserved. The Court therefore finds, in this case, every point waived by the plaintiff in error, except the motion for a new trial, overruled.

The replication is based upon the statute exempting mechanics' tools from sale, under execution. The only objection taken before the Circuit Court was, that a horse, used in the tanner's bark-mill, was not an implement of trade. This was a matter of fact to be established

by evidence. At all events, by demurring, he admitted the facts stated in the plea to be true. *Stephen Pleading*, 175.

As to the instructions given by the Court, and for the giving of which exceptions were taken, see 3 *Starkie, p.* 1445.

*By the Court*, PASCHAL, J. There are three points in this case which the Court will notice. And we may first remark, that the record shows a good deal of irregularity. Leave was given to withdraw the special pleas, and to file amended pleas. It does not appear, however, that any pleas were withdrawn; or, if so, what amendments were made. It is unnecessary to consider the connection of Burney, as defendant, because the plaintiff elected to enter a *nolle prosequi* as to him, and to proceed against Wallace, alone.

Wallace filed a special plea, attempting to justify, under an execution, sued out on a judgment obtained by him before Hosea Cardwell, a justice of the peace of Washington county; which execution, he alleges, was placed in the hands of Burney, a constable of the proper township, and that the horse was, therefore, properly sold, as the property of the defendant. The plea is, in substance, as follows: "That, on the 6th day of February, 1841, he (Wallace,) obtained judgment, before Hosea G. Cardwell, an acting justice of the peace, in and for the township and county aforesaid, against the plaintiff, for the sum of $35 84 cents, debt, 40 cents damages, and $1 50 cents for costs of suit; and, on this judgment, and while the same was in full force and virtue, to wit, on the 19th day of February, 1841, he, said defendant, Wallace, sued out a writ of execution, and placed the same in the hands of said defendant, Burney, who was then and there constable of said Prairie township, duly authorized to act as such." The plea then goes on to aver a levy and sale, by virtue of this execution, of the property in question.

The authority, commission, and jurisdiction of the justice, are not averred with that particularity necessary at common law; nor is the execution, under which the constable acted, very artificially described. But as the jurisdiction of justices is defined, under our constitution, and as the plea necessarily implies that the judgment was rendered on a debt or *contract*, we do not deem this so material. If any ob-

jections existed to the plea, the defendant should have pointed them out by demurrer; otherwise, there being sufficient facts on the record to constitute a jurisdiction, the omissions, if any, are amended by the replication; and when the demurrer to the replication was filed, the Court could not look back to any objection to the plea, which ought to have been specially pointed out by the plaintiff. See *Davies vs. Gibson,* 2 *Ark. Rep.* 115. *Buckner et al. vs. Real Estate Bank. Sims vs. Whillock & Newman,* decided at the present term of this Court. Such defects are amended, unless specially pointed out.

The plaintiff below raised no objection on account of any insufficiency in the plea, but filed a special replication thereto. In this replication he brings on the record, as new matter, " that the plaintiff, long before, and at the time when, &c., was, and still is, a mechanic, carrying on his trade of tanning, to wit: in the county aforesaid; and that the property, to wit: the horse, in said plea mentioned, was, then and there, a necessary *implement* of trade of said plaintiff, while carrying on his trade of tanning," &c.; concluding, that the " defendant, with force and arms, seized, &c." This is, clearly, an attempt to claim the property in question as exempt from sale, under the 6*th division of 20th sec. Rev. St., Ch. LX., p.* 377. This Court would not hold a horse " an implement of trade of a mechanic." The statute certainly only contemplates the exemption of " one horse, mule, or yoke of oxen," when owned by " a farmer." And even in that case, in pleading such exemption, the farmer should certainly aver that the horse in question was the only horse owned by him. But the horse of a mechanic would no more be exempt from sale than would the steam-engine by which his machinery was propelled. The demurrer to the replication ought, therefore, to have been sustained. This would be sufficient error to reverse the judgment. Nevertheless, we will proceed to consider a question of practice, raised in the Circuit Court, and insisted on here.

The bill of exceptions shows that, after the jury were sworn, " the defendant moved to rule the plaintiff to security for costs, and offered to prove the insolvency and inability of the plaintiff to pay the costs of suit, which motion the Court overruled, and refused to hear." The 3*d sec. of Ch. XXXIV., Rev. St., p.* 202, provides that, " if, at any

Wallace *vs.* Collins.

time after the commencement of any suit, by a resident of this State, he shall become *non-resident;* or, in any case where the Court shall be satisfied that the plaintiff is unable to pay the costs of suit; or, that he is so unsettled as to endanger the officers of Court, with respect to their legal demands, the Court shall, on motion of the defendant, or any officer of Court, rule the plaintiff, on or before a day in such rule named, to give security for the payment of the costs of such suit." The language of this statute is general, but we must give it such construction as not to render it too great a burden to the courts, whose business requires that they should not be too much impeded with motions which might have been made before the swearing of the jury. Were the Circuit Court compelled to hear motions relative to the insolvency of suitors, after the jury are sworn, we can see how there would be not only inconvenience to the courts, but often real prejudice to the parties. There would frequently be unnecessary delay of the time of the Court; causes would be continued, which might have been tried, had the plaintiff had notice of the defendant's intention; and suitors might, sometimes, be seriously prejudiced by the agitation of such a question before the jury who are to determine on their rights. Besides, if the motion may properly be made after the jury are sworn, we can see no good reason why such motion may not be made after they have retired from the box, and before they render their verdict. The question is one of practice, left to the sound, but not arbitrary, discretion of the Court. We hold the better rule to be, to hear evidence on such motion, at any time before the jury are summoned in the case. Such a rule would, doubtless, be more in conformity with the intention of the Legislature. In our opinion, therefore, the Circuit Court did right in overruling the motion of the defendant below, to rule the plaintiff to security for costs.

Our decision in relation to the replication would, perhaps, render unnecessary any expression of opinion in relation to the instructions asked. Nevertheless, we will consider the case, as disclosed by the evidence embodied in the bill of exceptions. The principle involved, to be understood, must be considered with some accuracy. The defendant in error himself, introduced a constable, who swore that he levied an execution of Wallace *vs.* Collins, on the horse; that Collins

at first said the horse was under mortgage, (which the witness found to be untrue); that he advertised the horse for sale; that, on the day of sale, Collins delivered the horse to the constable, and came with the witness to town; that, after he got to town, Collins forbade the sale; that Wallace told witness to sell the property; and that, if witness did not make the money, he would hold witness responsible. Taking the strongest view of this case, here is the first actual connection of Wallace with the trespass. But it must here be borne in mind, that the plaintiff below voluntarily introduces evidence of an execution, levy by a constable, the delivery of property by the defendant to the officer of the law, and a subsequent sale, against his will. The plaintiff himself having proven a levy, we are clearly of opinion that the property of Collins was immediately divested, and that he could no longer forbid the sale, unless by satisfying the execution in some other way. His control over the property ceased, the moment of the levy. And although the evidence adduced at the trial is not of the highest grade which might have been produced, yet, as the party himself offered it, he has no right to complain. Were the suit between a third person and Wallace, a person who alleged that Wallace had illegally taken his goods to pay Collins' debt, the rule would be different. In that case, the execution, under any state of case, would not amount to a justification. But, in this case, the plaintiff below voluntarily introduces evidence to show, that he delivered his own property to the officer, whom he recognizes as such, to pay his own debt. And the trespass, of which he complains, and which formed the basis of the improper instructions of the Court, is, that he afterwards dissented from the sale. Taking the execution wholly out of the case, and allowing Burney to be the mere agent of Wallace, are we certain that Collins has any just cause of complaint? Of this *quære*, see *Hunt vs. Rousmanier's adm'r,* 5 *Pet. Rep*. 401. 8 *Wheat.* 174.

We are, therefore, of opinion that the Circuit Court erred: 1st, in overruling Wallace's demurrer to Collins' replication; 2d, in giving the instructions asked by the plaintiff below.

Judgment reversed.